No. 24-4048

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

**UNITED STATES OF AMERICA,**

*Plaintiff-Appellant,*

v.

**RON K. ELFENBEIN,**

*Defendant-Appellee.*

On Appeal from the United States District Court
for the District of Maryland at Baltimore (No. 1:22-CR-00146-JKB-1)
The Honorable James K. Bredar, Senior District Judge

**BRIEF OF *AMICI CURIAE* AMERICAN MEDICAL ASSOCIATION
AND MARYLAND STATE MEDICAL SOCIETY IN SUPPORT OF
DEFENDANT - APPELLEE RON K. ELFENBEIN**

Jeff Wurzburg
jeff.wurzburg@nortonrosefulbright.com
Frost Tower 111 W. Houston Street, Suite 1800, San Antonio, Texas 78205
Telephone: 210-270-9338
Facsimile: 210-270-7205

Counsel for Amici Curiae American Medical Association and Maryland State Medical Society

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by all parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __24-4048__  Caption: United States of America v. Ron K. Elfenbein

Pursuant to FRAP 26.1 and Local Rule 26.1,

the American Medical Association and Maryland State Medical Society
(name of party/amicus)

who is _____amici curiae_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2. Does party/amicus have any parent corporations?  ☐ YES ☑ NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
   If yes, identify all such owners:

i

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☐ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐ YES ☑ NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/Jeff Wurzburg     Date: 10/7/2024

Counsel for: Amici Curiae

# TABLE OF CONTENTS

INTERESTS OF *AMICI CURIAE* .................................................................................1

SUMMARY OF ARGUMENT ....................................................................................3

ARGUMENT .................................................................................................................3

I.  The CPT coding system is the most widely accepted medical nomenclature for reporting healthcare services under public and private health insurance programs. ...........................................................................3

II. Physicians should not face allegations of fraud or abuse for differences in interpretation and/or inadvertent errors in E/M coding. ..............................6

CONCLUSION .............................................................................................................8

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Dubin Orthopaedic Ctr. v. Commonwealth*,
    294 S.W.3d 421 (Ky. 2009)............................................................................3

*Hooper v. UnitedHealthcare Insurance Company*,
    694 Fed.Appx. 902 (4th Cir. 2017)................................................................3

*Practice Mgmt. Info. Corp. v. Am. Med. Ass'n*,
    121 F.3d 516 (9th Cir. 1997) .........................................................................4

*Rehab. Ass'n of Virginia, Inc. v. Kozlowski*,
    42 F.3d 1444 (4th Cir. 1994) .........................................................................7

**Rules and Statutes**

45 CFR § 162.1002 ..............................................................................................6

42 U.S.C. § 1395w-4(c)(5) ..................................................................................6

Health Insurance Portability and Accountability Act of 1996..............................6

**Other Authorities**

AMA, *The CPT Code Process*, https://www.ama-assn.org/about/cpt-
    editorial-panel/cpt-code-process....................................................................2

AMA, *Current Procedural Terminology* (4th ed. 2024) .................................4, 5

AMA, *Non-Payment and Audit Takebacks by CMS*, https://www.ama-
    assn.org/system/files/2019-04/a19-bot31.pdf#:~:text=Policy%20H-
    175.981,%20%E2%80%9CFraud%20and%20Abuse%20Within%
    20the%20Medicare;................................................................................7, 8

AMA, Policy H-175.982,
    *Due Process for Physicians* ........................................................................13

AMA, Policy H-175.981,
    *Fraud and Abuse Within the Medicare System* ...........................3, 10, 12, 13

AMA, Policy H-175.979,
  *Medicare "Fraud and Abuse" Update* ............................................................... 12

AMA, Policy H-70.952,
  *Medicare Guidelines for Evaluation and Management* ..................................... 13

AMA, Policy H-70.982,
  *Primary Health Care Reimbursement Coding* ......................................... 3, 12, 13

AMA, *Principles*, AMA Principles of Medical Ethics, https://code-
  medical-ethics.ama-assn.org/principles ........................................................ 11

CMS, *List of CPT/HCPCS Codes*,
  https://www.cms.gov/medicare/regulations-guidance/physician-
  self-referral/list-cpt-hcpcs-codes ................................................................... 6

*CPT Overview and Code Approval*,
  https://www.ama-assn.org/practice-management/cpt/cpt-overview-
  and-code-approval ........................................................................................... 5

*CPT Overview and Code Approval*, AMA, available at:
  https://www.ama-assn.org/practice-management/cpt/cpt-overview-
  and-code-approval ........................................................................................... 5

*Medical Services*, AMA Code of Medical Ethics, https://code-
  medical-ethics.ama-assn.org/ethics-opinions/fees-medical-services ................... 7

*Medicare "Fraud and Abuse"* ............................................................................. 8

*Principles*, AMA Principles of Medical Ethics, https://code-medical-
  ethics.ama-assn.org/principles ........................................................................ 6

# INTERESTS OF *AMICI CURIAE*

*Amici*, the American Medical Association (AMA) and Maryland State Medical Society (MedChi), submit this brief in support of Defendant-Appellee Ron K. Elfenbein.[1] As associations representing medical professionals, *amici* have experience and expertise concerning the issues raised in this appeal. *Amici* have a significant interest in this case and believe that their experience and insight with the issues before this Court are both desirable and relevant to the disposition of this appeal.

The AMA was founded in 1847 to promote the art and science of medicine and the betterment of public health, which remains its core principles. The AMA is the largest professional association of physicians, residents, and medical students in the United States. Additionally, through state and specialty medical societies and other physician groups, seated in the AMA's House of Delegates, substantially all U.S. physicians, residents, and medical students are represented in the AMA's policy-making process. AMA members practice in all fields of medical specialization and in every state.

The AMA is the copyright holder of the *Current Procedural Terminology* (CPT®) code set,[2] whose use by Defendant-Appellee to obtain reimbursement for COVID-19 related services underlies this case. The CPT Editorial Panel (Panel), utilizing an open and transparent review process, is supported by all sectors of the healthcare industry, including the CPT Advisory Committee (Committee), and is responsible for annually updating and maintaining the CPT code set using a set of published criteria. The Panel is composed of 21 members who are appointed by the

---

[1] *Amici* hereby certify that no party's counsel authored this brief in whole or in part, no party or party's counsel contributed money intended to fund preparation or submission of this brief, and no person other than *amici*, its members or its counsel contributed money intended to fund preparation or submission of the brief.

[2] CPT is a registered trademark of the AMA.

AMA Board of Trustees to revise and create CPT codes, descriptors, rules and guidelines.[3] The Panel meets three times per year in open, hybrid meetings, which are attended by more than 1,000 attendees. The Panel members are clinical experts who use their independent clinical judgment to review code change applications (CCAs) submitted for the Panel's review. Panel members have various clinical backgrounds, including physicians and other qualified healthcare professionals. They are nominated by various organizations, including health insurers, the American Hospital Association and other health care organizations that participate in the CPT Panel process.

The Panel is supported by all sectors of the health care industry, which provide additional review and comments on submitted CCAs. One key component of the review process is the input provided by the Committee, which is predominantly made up of physicians nominated by the national medical specialty societies represented in the AMA House of Delegates. The Committee provides comments on procedure coding and appropriate nomenclature relevant to the applicable specialties, promotes and educates its membership on the use of CPT coding, and suggests revisions to the CPT code set, among other objectives.

MedChi is Maryland's state medical association for licensed physicians, of which Defendant-Appellee is a member. MedChi was founded in 1799 and is the foremost advocate and resource for Maryland's physicians, their patients, and public health. MedChi is a component of the AMA.

The AMA and MedChi submit this brief on their own behalf and as representatives of the Litigation Center of the AMA and the State Medical Societies. The Litigation Center is a coalition among the AMA and the medical societies of each state and the District of Columbia. Its purpose is to represent the viewpoint of

---

[3] *See* AMA, *The CPT Code Process*, https://www.ama-assn.org/about/cpt-editorial-panel/cpt-code-process.

organized medicine in the courts.

## SUMMARY OF ARGUMENT

This *amicus curiae* brief will focus on the history, methodologies and purposes of the CPT code set to help the Court understand the fundamentals of the CPT Editorial Panel process. The CPT code set is an essential resource utilized by providers and physicians across the American healthcare system. Consistent with guidance from the Centers for Medicare & Medicaid Services (CMS), healthcare professionals are best suited to determine the appropriate and applicable CPT code for a medical visit with a patient. Physicians must retain independence to exercise medical judgment when determining the appropriate CPT code for a patient visit or procedure. Unnecessary scrutiny of clinicians' and professionals' judgment could have a chilling effect on the provision of patient care. For these and the reasons set forth below, *amici* urge this Court to resist any effort to infringe on the longstanding and necessary deference to clinicians that is at the heart of the U.S. health care system.

## ARGUMENT

**I.  The CPT coding system is the most widely accepted medical nomenclature for reporting healthcare services under public and private health insurance programs.**

CPT stands for "Current Procedural Terminology," and the CPT code is a work of clinical nomenclature updated and published annually by the AMA since 1966.[4] The CPT code set contains the uniform "set of codes, descriptions, and guidelines intended to describe procedures and services performed by physicians and other health care providers" utilized by medical providers and the insurance industry.[5] The CPT code set is an evolving list of services and procedures with five-

---

[4] *Dubin Orthopaedic Ctr. v. Commonwealth*, 294 S.W.3d 421, 422 (Ky. 2009).
[5] *Hooper v. UnitedHealthcare Insurance Company*, 694 Fed.Appx. 902, 908 (4th

digit numerical codes for each.[6] CPT descriptive codes and identifiers serve a variety of functions foundational to clinician coding and billing.

The 2024 version of the CPT codebook provides an overview and description of the codes used:

> The purpose of the terminology is to provide a uniform language that will accurately describe medical, surgical, and diagnostic services, and will thereby provide an effective means for reliable nationwide communication among physicians and other qualified health care professionals, patients, and third parties. CPT 2024 is the most recent revision of a work that first appeared in 1966.
>
> CPT descriptive terms and identifying codes currently serve a wide variety of important functions in the field of medical nomenclature. The CPT code set is useful for administrative management purposes such as claims processing and for the development of guidelines for medical care review. The uniform language is also applicable to medical education and outcomes, health services, and quality research by providing a useful basis for local, regional, and national utilization comparisons. The CPT code set is the most widely accepted nomenclature for the reporting of physician and other qualified health care professional procedures and services under government and private health insurance programs.[7]

The current edition of the CPT identifies more than ten thousand medical procedures and provides a brief description for each. The CPT is divided into six sections—E/M, anesthesia, surgery, radiology, pathology and laboratory, and medicine.[8] Within each section, procedures are further arranged into subsections designed to assist the provider in finding what they need (e.g., surgery is divided by

---

Cir. 2017); citing to *Practice Mgmt. Info. Corp. v. Am. Med. Ass'n*, 121 F.3d 516, 517 (9th Cir. 1997) (noting that the CPT is revised "each year to reflect new developments in medical procedures"), amended by 133 F.3d 1140 (9th Cir. 1998).
[6] *Id*.
[7] AMA, *Current Procedural Terminology* (4th ed. 2024).
[8] *See id*.

each major body system).⁹ To note that a procedure or service has been altered by some specific circumstance, but not changed in its definition, modifiers can also be appended to the CPT code.¹⁰

All CPT codes are either numeric or alphanumeric, depending on the category.¹¹ CPT code descriptors are clinically focused descriptions of procedures or services and utilize a common nomenclature so that a diverse set of users can have shared understanding across the clinical health care paradigm.¹²

There are various types of CPT codes:

> **Category I:** These codes have descriptors that correspond to a procedure or service. Codes range from 00100–99499 and are generally ordered into sub-categories based on procedure/service type and anatomy.
>
> **Category II:** These alphanumeric tracking codes are supplemental codes used for performance measurement. Using them is optional and not required for correct coding.
>
> **Category III:** These are temporary alphanumeric codes for new and developing technology, procedures and services. They were created for data collection, assessment and in some instances, payment of new services and procedures that currently don't meet the criteria for a Category I code.¹³

The federal government, on numerous occasions, has authorized the use of the CPT code set and provided guidance on its use. In 1977, the federal government licensed CPT content from the AMA to be used in identifying physicians' services

---

⁹ *Id.*
¹⁰ AMA, *Current Procedural Terminology* (4th ed. 2024)
¹¹ AMA, *CPT Overview and Code Approval*, https://www.ama-assn.org/practice-management/cpt/cpt-overview-and-code-approval.
¹² *Id.*
¹³ *Id.*

for purposes of Medicare and Medicaid claim forms.[14] In 2000, as part of the implementation of the Health Insurance Portability and Accountability Act of 1996 Administrative Simplification provisions, the U.S. Department of Health and Human Services named CPT, in combination with the HCFA Common Procedure Coding System, as the national coding standard for physician and other health care professional services and procedures.[15]

II. **Physicians should not face allegations of fraud or abuse for differences in interpretation and/or inadvertent errors in E/M coding.**

The AMA encourages physicians to adhere to professional ethical standards and use sound business practices when charging for the medical services they provide. The AMA and MedChi appreciate the important public interest of protecting patients and the healthcare system from fraud and abuse. The AMA has remained firmly committed to eradicating true fraud and abuse from within the Medicare system.[16] The AMA has adopted nine *Principles of Medical Ethics* that provide standards of conduct that define the essentials of honorable behavior for physicians.[17] The second *Principle* provides ethical responsibilities in all professional interactions:

> A physician shall uphold the standards of professionalism, be honest in all professional interactions, and strive to report physicians deficient in character or competence, or engaging in fraud or deception, to appropriate entities.[18]

---

[14] *See* 42 U.S.C. § 1395w-4(c)(5).
[15] *See* 45 C.F.R. § 162.1002; CMS, *List of CPT/HCPCS Codes*, https://www.cms.gov/medicare/regulations-guidance/physician-self-referral/list-cpt-hcpcs-codes.
[16] AMA policy H-175.981, *Fraud and Abuse Within the Medicare System*.
[17] AMA, *Principles*, AMA Principles of Medical Ethics, https://code-medical-ethics.ama-assn.org/principles.
[18] *Id*.

Additionally, in its Code of Medical Ethics, the AMA explains that physicians are expected to demonstrate integrity when charging fees based on the type of service(s), difficulty or uniqueness of the service(s) performed, the time required to perform the service(s), and the skill needed to perform the service(s), among other requirements.[19]

It is critical to medical professionalism that a distinction be maintained between misinterpretation or mistake and deliberate act. An overly aggressive approach to fraud enforcement that interferes with clinician autonomy can lead to harmful economic and professional consequences for members of the medical community.

The rules and regulations regarding health care coding are complex, and good-faith differences in interpretation should not subject physicians to liability.

> There can be no doubt but that the statutes and provisions in question, involving the financing of Medicare and Medicaid, are among the most completely impenetrable texts within human experience. Indeed, one approaches them at the level of specificity herein demanded with dread, for not only are they dense reading of the most tortuous kind, but Congress also revisits the area frequently, generously cutting and pruning in the process and making any solid grasp of the matters addressed merely a passing phase.[20]

While a physician's ethical responsibility includes using appropriate judgment to choose between E/M coding levels when seeking reimbursements, fraud and abuse and criminal and civil penalties and/or sanctions should not be brought in response to this case.[21] The AMA has found that unnecessary administrative tasks

---

[19] AMA, *Fees for Medical Services*, AMA Code of Medical Ethics, https://code-medical-ethics.ama-assn.org/ethics-opinions/fees-medical-services.
[20] *Rehab. Ass'n of Virginia, Inc. v. Kozlowski*, 42 F.3d 1444, 1450 (4th Cir. 1994).
[21] *See* AMA policies H-175.981, *Fraud and Abuse Within the Medicare System*, and H-70.982, *Primary Health Care Reimbursement Coding*.

burdens the physician-patient relationship and believes that the federal government should redirect its enforcement focus on traditional definitions of fraud.[22]

For E/M codes specifically, the AMA seeks to alleviate the excessive content of the E/M documentation guidelines and to ensure appropriate safeguards for physicians so that inadvertent documentation or errors in patient records that do not meet the E/M coding guidelines, do not lead to fraud or abuse allegations on their own.[23]

*Amici* are committed to eradicating true fraud and abuse within the Medicare system. *Amici* also recognize and stress the importance of protecting physicians, such as *amici*'s members, from allegations of fraud, waste and abuse, as well as penalties and sanctions due to the differences in interpretation and/or inadvertent errors in coding.[24] More broadly, while *amici* believe that Congress, federal agencies, and states have made valuable investments in improving oversight and program integrity, certain efforts to fight health care fraud or identify areas of waste or abuse can have a tangible, negative impact on physician practices and unfairly affect physicians who are good actors. Clinicians must be able to exercise their judgment without fear of inadvertently facing allegations of wrongdoing.

## CONCLUSION

For the reasons stated above, *amici* respectfully urge this Court to uphold the

---

[22] AMA, *Non-Payment and Audit Takebacks by CMS*, https://www.ama-assn.org/system/files/2019-04/a19-bot31.pdf#:~:text=Policy%20H-175.981,%20%E2%80%9CFraud%20and%20Abuse%20Within%20the%20Medicare; AMA policy H-175.979, *Medicare "Fraud and Abuse" Update*.

[23] AMA policy H-70.952, *Medicare Guidelines for Evaluation and Management Codes*.

[24] *See* AMA policies H-175.981, *Fraud and Abuse Within the Medicare System*, H-175.982, *Due Process for Physicians*, H-175.979, *Medicare "Fraud and Abuse" Update*, H-70.952, *Medicare Guidelines for Evaluation and Management Codes*, and H-70.982, *Primary Health Care Reimbursement Coding*.

district court's final judgment.

October 7, 2024                    Respectfully submitted,

/s/ Jeff J. Wurzburg
Jeff J. Wurzburg
Norton Rose Fulbright US LLP
jeff.wurzburg@nortonrosefulbright.com
Frost Tower 111 W. Houston Street, Suite 1800 San Antonio, Texas 78205
Telephone: 210-270-9338
Facsimile: 210-270-7205
*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

This brief complies with the type-volume limits because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments), this brief contains 1,930 words, based on the "Word Count" feature of Microsoft Word.

This brief complies with the typeface and type style requirements because this brief has been prepared in a proportionally-spaced typeface using Microsoft Office Word in 14-point Times New Roman.

October 7, 2024         s/ Jeff J. Wurzburg
                        Jeff J. Wurzburg

                        *Counsel for Amici Curiae*

# CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

October 7, 2024

s/ Jeff J. Wurzburg
Jeff J. Wurzburg

*Counsel for Amici Curiae*